## 12372. WILLIAMS v. McCRANIE.

1. The court did not err in admitting the testimony of a physican in reference to the opinion given by him as to whether the bullet wound inflicted by the defendant upon one of the plaintiff's witnesses, who claimed to have seen the homicide, had entered from the front or the rear of the witness. This evidence was admissible for what it was worth, although the physician testified that he hardly thought he was entitled to an opinion, for the reason that he did not examine the wound at the point of exit; since the question as to whether a witness in a particular instance is qualified to give an opinion is to be determined by the court, and is not governed by the opinion of the witness himself as to his competency. *Glover* v. *State*, 129 *Ga.* 717 (9), 718 (59 S. E. 816). The witness, although an expert, gave his reasons for his opinion, as follows: "I can give you my best opinion as I got it from that careless examination. I saw the front of it. Where the bullet goes in, it is always a cleaner cut wound; where it comes out it lacerates the tissues. In other words, the point of entrance is clean cut and smooth, and the point of exit is more ragged. The front part of the wound on Josh Terry's head looked pretty smooth to me. I will not say positively about the back part of it, because I was rather careless about my examination. There were blood clots in the back of his hair, but I am not prepared to say that the back part of the wound was lacerated I will say positively that the front part of the wound was smooth. I have never seen a bullet wound with both a smooth entrance and a smooth exit. The entrance is always smooth."

2. Exception is taken to the following portion of the charge: "Not only must the killing be in self-defense, but it must be necessary to prevent the attack and injury amounting to a felony on the person killing, or the person killing must really and honestly so believe at the time, and in good faith have acted upon such belief and not in a spirit of revenge." The defendant contends that, since, under the Penal Code (1910), § 70, self-defense always justifies, the court improperly placed a double burden upon defendant in thus instructing the jury that there were other things which had to concur in order for the defense to excuse the homicide. This excerpt from the charge, while giving in disjunctive form the doctrines of justification as embodied in both sections 70 and 71 of the Penal Code, does not confuse them. Self-defense does justify, but the slayer must be thereby protecting himself from the commission of a felony upon his person, and the taking of human life is not justified as being in self-defense where it is only some lesser injury which by the killing is sought to be avoided. *Simmons* v. *State*, 79 *Ga.* 696 (3) (4 S. E. 894); *Battle* v. *State*, 103 *Ga.* 53 (4), 54 (29 S. E. 491). As was also in substance further charged in the disjunctive form, the defendant would have been justified if the circumstances were such as to excite the fears of a reasonable man that such a felonious attack upon his person was about to be perpetrated, and in the killing he really acted under such fears and not in a spirit of revenge.

3. The judge charged the substance of the first sentence of section 4425 of the Civil Code (1910), as follows: "The word 'homicide,' used in this section, shall be held to include all cases where the death of a human being resulted from a crime or from criminal or other neg-

ligence." While no issue of negligence was in any way involved, either under the pleadings or the evidence, " it was not cause for a new trial that the judge read in charge to the jury. a code section part of which was applicable to the case under consideration and part not, it not appearing that the reading of the inapplicable part was calculated to mislead the jury, erroneously affected their verdict, or was prejudicial to the rights of the complaining party." *Eagle & Phenix Mills* v. *Herron*, 119 *Ga.* 389 (3) (46 S. E. 405).

4. Exception is taken to the following excerpt from the charge: " After you have fixed upon the amount representing the yearly earnings of the deceased and the number of years he would probably have lived, you can by multiplying the one by the other determine approximately what would have been the gross amount of the earnings of his whole life. The gross amount must be reduced to its present cash value, which would necessarily be less than the gross amount, and which may be arrived at by dividing this gross sum by one dollar plus the legal rate of interest, 7% per annum, for the expectancy years of the deceased." The exception is without merit, and is admittedly controlled by the ruling of this court, in *Standard Oil Co.* v. *Reagan*, 15 *Ga. App.* 571 (5), 589, 591 (84 S. E. 69). "The present worth of a debt payable at some future period without interest is such a sum as being put at interest will amount to the debt at the period when the debt becomes due." Sanford's Higher Analytical Arithmetic, 226. The rule given by this author to obtain the present worth is to " divide the given sum or debt by the amount of $1 for the given time at the given rate; the quotient will be the present worth."

5. The rule which precludes a witness in a case such as this from proving the amount of damages by a mere general statement would not exclude testimony as to the annual value of the decedent's services, especially where, as here, the witness, who is subject to cross-examination, goes into details as to the facts upon which his opinion is based. *Central of Ga. Ry. Co.* v. *Hartley*, 25 *Ga. App.* 110 (4), 112 (103 S. E. 259) and cases cited. See also *Wrightsville & Tennille R. Co.* v. *Gornto*, 129 *Ga.* 204, 206 (58 S. E. 769).

6. The exception taken to the reference by the court to the life expectancy, under the annuity table, " of an average person of the age of deceased " could not justify a reversal on the theory that the court thus inferentially fixed the expectancy of the deceased, especially since the court had already charged that the tables were not binding upon the jury, and that they were not obliged to use them at all, and had previously instructed them that, " if in the case at bar the expectancy of the deceased would, under the evidence, have probably been greater or less than that of the average man, the amount of the damages to be allowed, if any, should be diminished or increased accordingly.

7. The remaining grounds of the motion for a new trial are without merit. In the judge's statement of the plaintiff's contentions he did not err in including her contention that the deceased was an expert automobile mechanic. A number of witnesses testified as to his mechanical ability in that line. See *Napier* v. *Strong*, 19 *Ga. App.* 401 (4), 409 (91 S. E. 579). Nor was it error, especially in view of such evidence, to charge upon what might have been the increased earning capacity of the decedent. The remaining ground of the motion, upon which counsel appear especially to rely, is treated in the opinion.

DECIDED NOVEMBER 18, 1921.

Action for damages; from city court of Thomasville — H. H. Merry, judge pro hac vice. March 11, 1921.

Application for certiorari was denied by the Supreme Court.

This was a suit for damages on account of the homicide of the plaintiff's husband, the petition alleging that he was unlawfully and intentionally shot and killed by the defendant, not by the commandment or with the permission of law, and not in self-defense or in defense of habitation, property, or person, under such circumstances as would justify the killing. The defendant, by his original plea, admitted his residence in the county where the suit was brought, admitted the shooting and killing of the plaintiff's husband and that it was not done by the commandment of law, and denied every other allegation of the petition. By amendment the plea alleged: "It is true that on the 11th day of October, 1919, the defendant shot the petitioner's husband, Parrish McCranie, with a pistol inflicting wounds which resulted in the death of the said Parrish McCranie, but the defendant alleges that he killed the said Parrish McCranie in self-defense, and that said killing was justifiable homicide, and that at the time of the said killing the said Parrish McCranie was manifestly intending and endeavoring by violence and surprise to commit a felony on the said W. W. Williams." The jury found a verdict for the plaintiff in the sum of $20,000. The defendant excepts to the overruling of his motion for new trial.

*Titus, Dekle & Hopkins, Branch & Snow,* for plaintiff in error.

*Thomas W. Hardwick, Eldon L. Joiner, Walter J. Hammond, Clifford E. Hay,* contra.

JENKINS, P. J. (After stating the foregoing facts.) Exception is taken to the following portion of the charge of the court: "The court instructs you as a matter of law that the effect of the admissions in the answer that the defendant did kill the plaintiff's husband by shooting him with a pistol, as charged in paragraph 2 of the petition, and by the filing of the amendment to the answer, specifically pleading justification, is to establish prima facie that said killing was unlawful, and that, if the plaintiff has proved sufficient facts or data from which the jury can form a reasonable estimate as to the value of the life of the said deceased, then such proof, together with said admission and said

plea, would make out a prima facie case." This instruction is alleged to be error and harmful to the defendant under the pleadings in the case, for two reasons: (1) that the admission in the answer to paragraph 2 of the petition, and the admission in his plea of justification, whether standing separately or taken together, did not in law have the effect of establishing prima facie that the killing was unlawful, nor did the statements contained in said plea in law constitute an admission that the killing was prima facie unlawful; and (2) "that the effect of such plea of justification, either standing alone or taken along with the answer, when considered with the testimony of the plaintiff as to the amount of damages, did not amount to a prima facie case for the plaintiff in the sense that the term 'prima facie' case is used in the law." The defendent contends that "mere proof of damages by the plaintiff, without more, would have made out no [prima facie] case, and that it was harmful error for the court to have coupled this proof of damage with a statement in the defendant's plea of justification, and thereupon charged the jury as a matter of law that the admission of the unlawful killing by the defendant in his plea, considered with the proof of damage, would make out a prima facie case for the plaintiff;" that, "without proof in this case from which an unlawful killing would arise, the plaintiff would in no event have been entitled to have recovery; and that, therefore, the court supplied the proof that the plaintiff should have made, by telling the jury that the defendant had admitted that the killing was prima facie unlawful."

It cannot be said, nor did the judge charge, that the admission in the defendant's plea had the effect of establishing what could be strictly called a complete prima facie case in favor of the plaintiff. The admission did not cover the amount of the damage. Under the provisions of section 4488 of the Civil Code (1910) this was not necessary, however, in order for the defendant to obtain the opening and conclusion by assuming the affirmative of the main issue under a plea of justification. This section of the code provides as follows: "In every case of tort, if the defendant was authorized by law to do the act complained of, he may plead the same as a justification; by such plea he admits the act to be done, and shall be entitled to all the privileges of one hold-

ing the affirmative of the issue; but such plea shall not give to the defendant the right to open and conclude the argument before the jury, unless it is filed before the plaintiff submits any evidence to the jury trying the case." In actions ex contractu and in cases arising ex delicto; where the act complained of is not such as could be justified under the law, in order to obtain the opening and conclusion the defendant must admit a complete prima facie case, and to do that he must make such admissions as would, without more, prima facie entitle the plaintiff to recover in the amount sued for. *Brunswick & Western R. Co.* v. *Wiggins,* 113 *Ga.* 842 (2) (39 S. E. 551, 61 L. R. A. 513). In the instant case the judge did not state to the jury that the defendant had made such an admission as would, without more, prima facie entitle the plaintiff to recover in the amount sued for, but in substance he instructed them that the plaintiff would be entitled to recover such damages as she had proved, unless the defendant had carried his portion of the burden by showing that the admitted homicide, though presumed by law to be unlawful, was in fact justifiable. This, we think, is in clear accord with the recent ruling in *Darby* v. *Moore,* 144 *Ga.* 758 (5), 759 (87 S. E. 1067), in which the Supreme Court upheld as sound the following charge: "I charge you, gentlemen, that defendant having admitted by his pleadings the killing of O. G. Moore, and that the plaintiff is the widow of O. G. Moore, I charge you that the plaintiff would be entitled to recover damages for the slaying of her husband, unless it is shown to you that such killing was justifiable, or excusable, under the rules of law which will be hereafter given to you in charge."

Where the act which the defendant admits is one which as a matter of law is presumed to be unlawful, a prima facie presumption of its unlawfulness follows, not as an additional admission, but as a legal consequence; and this result the defendant cannot escape by attaching to his admission of the act a plea of justification. This presumption of law is the thing which by his plea he proposes and assumes to disprove, and this it is incumbent upon him to do. He must show that, contrary to the legal presumption, the admitted act was in fact lawful. By his admission of the act charged, coupled with a plea of justification, he does not

place himself out of court by himself admitting the unlawfulness of the act. This he in fact denies. The law raises the presumption, the actual truth of which the defendant denies. The resulting legal inference is something which he cannot be heard to dispute; but since it is prima facie only, it is his privilege to deny and disprove its truth. It cannot be disputed that when the homicide is shown or admitted the law presumes malice, and it devolves upon the defendant to show justification. This the counsel for defendant do not, in their exceptionally able arguments, undertake to controvert. They do not deny that the defendant by his plea voluntarily assumed the burden of showing that the killing was justifiable. What they object to is the statement by the judge that. upon the admission of the act of killing, the law raised a mere prima facie presumption that it was unlawful. Their contention is that "no presumption or inference of the law will arise against him from such a plea, nor will he be held to have admitted even prima facie that the act, which he has voluntarily assumed to prove was a lawful act, was an unlawful act. This would be to put upon him the additional burden, not only of proving by his evidence that the alleged act was lawful, but of going to the jury handicapped by a solemn admission that his act, which he has assumed to show was lawful, was unlawful." They argue that the rights of the defendant, under the quoted section of the code (§ 4488) are nullified by the charge that the effect of admitting the act of killing raises a prima facie presumption that the killing was unlawful, when the admission is coupled with the plea of justification. As we see it, there would be no burden for the defendant to assume, if, after admitting the killing, the law did not prima facie establish that such act was unlawful. The legal presumption is the very thing which the defendant finds it necessary to deny and disprove. It is not the existence, but the truth, of this presumption which the defendant under his plea of justification seeks to dispute. Nor, as we see it, does his plea of justification burden him with any admission that his act was unlawful. This he denies. It is the law, not the defendant, which says that the admitted act shall be deemed unlawful until the contrary shall be shown; and this, under his plea, it is his privilege to disprove. The only burden which the defendant has assumed is the one which he seems to ad-

mit he has assumed, to wit, the burden of showing that the kill-
ing was lawful. It is true that the provisions of section 4488, su-
pra, give to a defendant pleading justification in an action of tort
the right to the opening and conclusion by assuming the affirma-
tive of the main issue, without admitting a complete prima facie
case; but they do not give him such a privilege stripped of the
attendant burden of carrying the onus which he thus actually
assumes.

　　　　*Judgment affirmed. Stephens and Hill, JJ., concur.*